IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 1:24-cr-460 (CKK) |
| | : | |
| v. | : | 40 U.S.C. § 5104(e)(2)(D) |
| | : | (Disorderly Conduct in a Capitol Building |
| **KRISTEN OLIVER CUNNINGHAM,** | : | or Grounds) |
| | : | 40 U.S.C. § 5104(e)(2)(G) |
| **Defendant.** | : | (Parading, Demonstrating, or Picketing in |
| | : | a Capitol Building) |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Kristen Oliver Cunningham, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. Defendant Kristen Oliver Cunningham ("Cunningham"), who lives in Humbolt County, California, traveled to Washington, D.C. with his girlfriend Stacey Urhammer and took part in the riot at the U.S. Capitol building.

9. At approximately 2:18 p.m., Cunningham and Urhammer illegally entered the U.S. Capitol through the Senate Wing Doors after the crowd had breached the Senate Wing Doors minutes earlier. Cunningham and Urhammer entered the Capitol at a point when the doors' glass was shattered, and building alarms were sounding. He and Urhammer both knew that they had no authority to enter the building, and they did so in order to disrupt the proceedings in Congress that were happening at the time. Cunningham walked to the Crypt where the police had formed an impromptu police line to prevent rioters from advancing further toward the U.S. House of

Representatives chamber. Eventually rioters in the Crypt overwhelmed the police and pushed past them.

10. At approximately 2:28 p.m., Cunningham and Urhammer pushed themselves against the wall to the left of the Memorial Door arch after a police line pushed the crowd back into the area. Cunningham and Urhammer later walked through Statuary Hall where Cunningham moved back the ropes while Urhammer appeared to record a video with her cellphone. *See* Figure 1 and Figure 2 below



*Figure 1*



*Figure 2*

11. At approximately 2:57 p.m., Cunningham and Urhammer were still parading around the inside of the Capitol building, walking down the hallway near the House Wing Door after police pushed rioters out of the Memorial Door area.

12. Cunningham and Urhammer knew at the time they entered the U.S. Capitol Building that they did not have permission to enter the building. Once inside, they willfully and knowingly engaged in disorderly and disruptive conduct with the intent to disrupt the orderly conduct of the joint session of Congress that day. Cunningham and Urhammer willfully and knowingly paraded, demonstrated, and picketed within the U.S. Capitol Building.

### *Elements of the Offense*

13. The parties agree that Disorderly Conduct in a Capitol Building or Grounds (40 U.S.C. § 5104(e)(2)(D)) requires the following elements:

   a. First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

b. Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

c. Third, the defendant acted willfully and knowingly.

14. The parties agree that Parading, Demonstrating or Picketing in a Capitol Building (40 U.S.C. § 5104(e)(2)(G)) requires the following elements:

a. First, the defendant paraded, demonstrated, or picketed in a Capitol Building.

b. Second, the defendant acted willfully and knowingly.

### *Defendant's Acknowledgments*

15. The defendant knowingly and voluntarily admits to all the elements as set forth above.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *s/ Cytheria D. Jernigan*
CYTHERIA D. JERNIGAN
Assistant United States Attorney
D.C. Bar No. 494742
Capitol Siege Section, Detailee
U.S. Attorney's Office
District of Columbia
Telephone No: (318) 676-3600
cytheria.jernigan@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Kristen Oliver Cunningham, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10.15.24

Kristen Oliver Cunningham
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10/15/24

C. Macchiaroli
Christopher Macchiaroli
Attorney for Defendant